Rockingham, }
Jan. 2, 1912. }

## BARKER     *v.*     EASTMAN, *Trustee, & a.*

## EASTMAN, *Trustee,*     *v.*     BARKER *& a.*

Where the pendency of a prior action in the federal court is pleaded in abatement of a suit in the court of this state, the plea should set out the identity of the cause of action and the parties, and the record of the prior proceeding should be enrolled.

The pendency of a prior action is not sustainable as a plea in abatement unless the record discloses that the cause of action and the plaintiffs are the same in both suits.

A motion for a stay of proceedings until questions raised in a suit in the federal court shall be there determined may be granted or denied by the superior court in the exercise of its discretion, and its action thereon is not subject to exception.

Such motion is properly denied when it appears that necessary persons have not been joined in the federal suit, while all interested in the controversy have been made parties to the proceeding in the superior court, where the questions involved may be finally determined and adequate relief be furnished.

Where a devise to trustees for the support of C. and H. during their lives provides that the estate shall pass to their children when the youngest is forty years old, on the condition that suitable security be furnished by them for

the payment of annuities provided for C. and H., the period for vesting and distributing the estate among the children during the lives of C. and H. will not arrive until the youngest child then in being reaches the age of forty.

BILLS IN EQUITY, involving rights growing out of the will of Hiram Barker and codicils' thereto. In the first action Charles B. Barker is plaintiff, and the defendants are Edwin G. Eastman, trustee, Clara Barker Berry, and Hiram H., Ella M., Will T., and Eda F. Barker. In the bill filed by Eastman, trustee, the defendants are Charles B. Barker and all the defendants named in the first bill except Eastman. Trial by the court. Facts found, and case transferred from the April term, 1911, of the superior court, by *Mitchell*, J. The will and codicils are set forth in *Edgerly* v. *Barker*, 66 N. H. 434, 435–440; and the rights of the parties thereunder have been considered by the court in that case, and also in *Edgerly* v. *Barker*, 67 N. H. 443, *Brown* v. *Berry*, 71 N. H. 241, and *Barker* v. *Barker*, 73 N. H. 353.

Hiram Barker's will was made September 9, 1882, the first codicil August 3, 1886, and the second codicil August 9, 1886. The testator died March 26, 1887. At the time of his death, his only daughter, Clara, was about forty-seven years old and unmarried. His only son, Hiram H., was thirty-five years old and had been married fifteen years to his present wife, Ella M., who was then thirty-two years old. There were then living five children of Hiram and Ella, as follows: Charles B., born March 23, 1874; Will T., born November 16, 1877; Hiram E., born December 17, 1878; Mary E., born June 5, 1884; and Louis H., born October 29, 1886. The last three died without issue in 1901 and 1902. Another daughter, Eda F., was born March 5, 1890, and on March 5, 1911, she became a beneficiary under subdivision 3 of article 8 of the will, which provides that "any other child or children of my said son, if any, hereafter born, shall have and receive all the rights and benefits from my estate that such child or children would have if living at my decease." Charles B. and Will T., surviving grandchildren of the testator, each received the sum of $3,000 on attaining the age of twenty-one years, or soon thereafter; but Eda F., the grandchild born after the death of the testator, has not been paid anything under the foregoing provision of the will, although she became twenty-one years old on March 5, 1911.

By subdivision 5 of article 8 of the will, it is provided that there shall be paid by the trustees "from said estate to each of said chil-

dren, when said child shall reach the age of twenty-one years, and to each of the children of my said daughter if she shall marry and have a child or children, the sum of from three thousand to five thousand dollars," providing such child shall then possess the qualifications prescribed. Clara Barker Berry married after the death of the testator, has never had issue, and is now about seventy-one years old.

The bill filed by Charles B. Barker alleges that as Clara Barker Berry is now seventy-one years old, the possibility of her having issue is extinct; that as Hiram H. Barker is fifty-nine years old and his wife, Ella M., is fifty-five years old, the possibility of their having further issue is practically extinct; and that the terms of the will and codicils evidence a purpose on the part of the testator to provide for a distribution of the estate when the youngest grandchild in being should attain the specified age. Because Eda F., the youngest of the grandchildren now living, became twenty-one years old on March 5, 1911, the plaintiff claims that the time for the distribution of the balance of the estate now in the hands of the trustee has arrived, and he prays that an order of distribution may be made, making provision for securing the rights of Clara Barker Berry and Hiram H. and Ella M. Barker, as stipulated in subdivision 5 of article 8 of the will. He also prays that on a distribution of the estate he may be adjudged entitled to one third thereof, and alleges that he is ready to furnish his part of the necessary security in the event of such distribution.

The bill filed by Eastman alleges, among other things, that he is now acting as sole trustee of the estate and has in his possession real and personal property of the value of about $157,000; that payments have been made according to the provisions of the will; that the defendants, Hiram H., Will T., and Eda F. Barker, have commenced proceedings against him in the United States circuit court, by bill in equity filed March 6, 1911, to determine some of the matters and things set forth by him in his bill filed in the superior court; and that being uncertain as to his rights and duties in the premises, he prays the advice of the court upon the following matters:

(1) When is the estate in the hands of the trustee to be distributed?

(2) Under the orders of which court—the federal court, the superior court of New Hampshire, or the probate court for Strafford county—is the distribution of said estate to be made, the

proceedings in relation thereto having been first commenced in the federal court?

(3) In the distribution thereof, to what part of the estate is Hiram H. Barker entitled?

(4) May the trustee pay the sum of $3,000 to Eda F. Barker?

(5) When do the duties of the trustee terminate, and may he continue to pay the beneficiaries under the will the allowances as heretofore paid, or any allowances whatever, pending the determination of the questions arising under and upon the construction of the will and the distribution of the estate?

Charles B. Barker is not party to the bill in equity pending in the United States circuit court, and Clara Barker Berry was not made party thereto until after both proceedings pending in the superior court had been instituted and served upon all the parties. May 2, 1911, the original plaintiffs in the federal proceeding obtained an order joining her as a defendant, which was served upon her May 10, after she had filed her answer in *Eastman* v. *Barker & a.* Ella M. Barker was also made plaintiff by amendment.

In the bill in equity filed in the circuit court, the plaintiffs claim that that court is not bound by the conclusions of the court of this state in *Edgerly* v. *Barker,* 66 N. H. 434, *Brown* v. *Berry,* 71 N. H. 241, and *Barker* v. *Barker,* 73 N. H. 353, although they pray for a distribution of the estate now in the hands of the trustee and that the same may be applied in due course of administration, that it may be determined what bonds or other security shall be given by each of them in accordance with the terms of the will, and that their respective shares in the estate may be ascertained.

The defendant Hiram H. Barker claims that if the construction of the will by the court of this state is conclusive, nevertheless he is entitled on distribution of the estate in the hands of the trustee to one half of the remainder, as surviving father of Hiram E., Mary E., and Louis H. Barker, who died without issue. This contention is denied by Charles B. Barker.

The superior court made the following rulings:

(1) That the trustee should continue to administer the trust during the pendency of these proceedings, under the direction of the court. To this ruling neither party excepted.

(2) That the trustee may pay the defendant Eda F. Barker the sum of $3,000, she having reached the age of twenty-one years, as provided in subdivision 5 of article 8. To this ruling the plaintiff Charles B. Barker excepted.

(3) That the time for the distribution of the estate as provided in and contemplated by the will has not arrived, as, among other reasons, there may yet be born grandchildren of the testator, children of Hiram H. Barker. To this ruling the plaintiff Charles B. Barker and all the defendants in Eastman's bill, except Clara Barker Berry, excepted.

(4) That on the distribution of the remainder of the estate in the hands of the trustee, Hiram H. Barker does not take one half as surviving father of the deceased grandchildren. To this ruling Hiram H. Barker excepted.

(5) That the distribution of the remainder of the estate in the hands of the trustee, when the respective rights of the parties shall have been determined by the court having jurisdiction thereof, shall be under orders of the probate court for Strafford county, or the superior court of New Hampshire.

*Streeter, Demond & Woodworth (Mr. Demond* orally), for Charles B. Barker.

*Robert Doe* and *Kivel & Hughes (Mr. Doe* orally), for Clara Barker Berry.

*Eastman, Scammon & Gardner,* for Edwin G. Eastman, trustee.

*Alfred S. Hayes* (of Massachusetts), by brief and orally, for the other defendants.

BINGHAM, J. The first proceeding is a bill in equity brought by Charles B. Barker, a beneficiary under the trust created by article 8 of the will of Hiram Barker, against Eastman, the trustee, and all the other beneficiaries thereunder, and filed in the superior court March 21, 1911. The second proceeding is a bill in equity brought by the trustee against all the beneficiaries and filed in the superior court April 1, 1911. After service had been had upon all the defendants in both proceedings, the defendants Hiram H., Ella M., Will T., and Eda F. Barker appeared specially therein, stating that they reserved all their rights to object to the jurisdiction of the court as to all matters contained in a certain bill in equity brought by them and filed in the circuit court of the United States for the district of New Hampshire on March 6, 1911. May 2, 1911, Charles B. Barker filed a motion in the superior court asking that the special appearances be stricken off, that the parties so appearing be required

to appear generally, and that a hearing be had upon the questions. raised by the bills. A hearing was had upon the motion, and the defendants in question were ordered to appear generally and answer on or before May 25, 1911. In compliance with this order, they appeared generally in both proceedings and filed an answer to the bill brought by the trustee; but to the bill of Charles B. Barker they filed a motion to dismiss the proceeding as to them, stating that a prior action was pending in the circuit court of the United States for the district of New Hampshire, in which they were plaintiffs and Eastman, trustee, was defendant, involving the same matter so far as they were concerned, and that the United States. court had prior and exclusive jurisdiction of the matters as to them. In this proceeding they also filed what they were pleased to term a. demurrer, but which in fact and in law was nothing more than a. motion to dismiss, based upon the pendency of the suit in the United States court. The motion to dismiss was denied. Answers were filed by the trustee and Clara Barker Berry to the bill of Charles. B. Barker, and also by Charles B. Barker and Clara Barker Berry, as well as by the other defendants, to the bill of the trustee. The proceedings were then consolidated, a hearing of all the parties. was had, the facts set out in the reserved case were found, and the jurisdictional question and all other questions of law were transferred to this court. No exception was taken to the denial of the motion to dismiss; but as it seems to have been agreed that the jurisdictional question should be considered with the other questions. raised, we proceed to consider it.

It has been held in the circuit court of the United States for this circuit, that the state court, although exercising concurrent jurisdiction with the federal court in this district, is not a domestic but a foreign court, and that a plea in abatement setting forth the pendency of a prior suit in the state court between the same parties,. involving the same subject-matter, and asking for the same relief,. will not abate the suit in the federal court. *Hughes* v. *Elsher,* 5. Fed. Rep. 263; *Latham* v. *Chafee,* 7 Fed. Rep. 520; *Lynch* v. *Insurance Co.,* 17 Fed. Rep. 627, 628; *Coe* v. *Aiken,* 50 Fed. Rep. 640. Such seems to be the holding of the federal courts in most of the circuits (*Marshall* v. *Otto,* 59 Fed. Rep. 249; *Shaw* v. *Lyman,* 79 Fed. Rep. 2; *Bunker Hill etc. Co.* v. *Company,* 109 Fed. Rep. 504, 508), although in some a different rule prevails. *Radford* v. *Folsom,* 14 Fed. Rep. 97, 99–102. See *Wilson* v. *Milliken,* 103 Ky. 165,— 42 L. R. A. 449, note.

In this state, in the case of *Smith* v. *Insurance Co.*, 22 N. H. 21, 25, it was said that the state court and the circuit court for this district were domestic courts, and that the pendency of a prior action for the same cause and between the same parties in one of the courts would be sufficient, if well pleaded, to abate the subsequent suit, if the court in which the prior action was pending had jurisdiction of the cause. But what is there said was not essential to a disposition of the case, as the question upon which it was finally disposed of was that the plea was defective, in that it did not sufficiently disclose that the court in which the prior action was pending had jurisdiction. So here, it is not essential to a disposition of these cases that the question should be decided; for if we assume that the state court and the circuit court for this district are domestic courts, the defendants' motion cannot be sustained as a valid plea in abatement. According to the ancient rule, a plea of a prior action pending, to be a good plea in abatement, had not only to set out the identity of the cause of action and of the parties, but the record of the prior action had to be enrolled. This is now the rule in this state. *Ladd* v. *Stratton*, 59 N. H. 200; *Smith* v. *Insurance Co.*, *supra*. A plea in abatement is a dilatory plea, and because of this the strict requirements of this ancient rule have not been relaxed. As late as 1878, this court in discussing the subject said: "Dilatory pleas not being favored, the highest degree of accuracy is required of the defendant who relies upon such a defence instead of the merits of his case. . . . We do not feel called upon to disturb the ancient practice in this respect, in favor of this class of pleas, although the practice may have become obsolete in other pleadings." *Messer* v. *Smythe*, 58 N. H. 312, 313.

But if we further assume that the record of the prior action was properly enrolled, the motion to dismiss cannot be sustained as a plea in abatement. This ancient doctrine is founded upon the supposition that the second suit is oppressive and vexatious; but "upon a plea of a former action pending, vexatiousness is a conclusion of law drawn from the fact of two suits brought by one person against another, for one cause, and pending at one time, and is not a matter of fact depending upon the question whether the first action was defective, . . . or whether, upon some . . . special ground, it is equitable that the second should be commenced while the first is pending." *Gamsby* v. *Ray*, 52 N. H. 513, 516. This being the case, it is apparent that the motion and the record of the federal suit do not disclose the fact of two suits.

brought by one person against another, for one cause, and pending at one time, from which vexatiousness as a conclusion of law can be drawn. Charles B. Barker did not bring the proceeding in the federal court and has not been made a party to it in any way. Eastman, the trustee, did not bring the federal proceeding; and while he has been made a party defendant therein, vexatiousness as a conclusion of law cannot be drawn from this circumstance. "The authorities all seem to require that not only must the cause of action be the same, but the plaintiffs also must be the same." *Bennett* v. *Chase*, 21 N. H. 570, 584. And it would seem that this must be so, vexatiousness being a conclusion of law and not of fact.

It was further suggested by counsel at the argument that the motion to dismiss might be regarded as a request to stay these proceedings until the main questions raised in the federal bill were determined in the circuit court, and that the state court, in the exercise of its discretion and as a matter of comity, might grant the request. If this is the question sought to be raised by the defendants' motion, the answer is that it presents no question of law; and the motion having been denied in the superior court, the question of discretion has been determined against them. *Driscoll* v. *Railway*, 71 N. H. 619. Moreover, we think the question of discretion was rightly decided. In the federal bill, the plaintiffs, among other things, pray for an accounting by the trustee, and that their shares in the trust estate and the security they shall be required to give to insure the payment of the life annuities provided for in the will shall be determined. They also assert the claim in that bill that Hiram H. Barker, as father of the three deceased grandchildren of the testator, should receive upon distribution of the trust estate what would have been their shares had they lived, or one half of the estate, and that the other half should be divided equally among the three surviving grandchildren, of whom Charles B. Barker is one. It is apparent that Charles B. Barker is a necessary party to a final determination of all these questions; that upon the question of accounting by the trustee, his position is necessarily adverse to that of the trustee (2 Per. Tr., 6th ed., s. 882); that upon the question of security, its character and amount, his position is adverse to that of the life annuitants to whom he and the other remaindermen must give security for the payment of the annuities before distribution can be had; and that upon the question of his share in the remainder—whether he shall receive one sixth as Hiram

contends, or one third as he contends—his position is adverse to that of Hiram.

The subject-matter of the federal bill does not present a separable controversy in which those who have been made parties to it are alone interested. A decision of the questions raised in that proceeding would not be binding upon Charles B. Barker, but would be open to further litigation in the proceeding brought by him and in which all parties in interest have been joined. In this situation, it was therefore at least doubtful whether the federal court would undertake to pass upon the questions raised in the federal bill without Charles B. Barker having been made a party defendant; and if he were made a party defendant, it is practically certain that the federal court would decline to pass upon them, as the diversity of citizenship upon which its jurisdiction is based would be wanting. For these reasons and others that might be mentioned, the superior court, having all the parties before it in a proceeding in which all these questions could be determined and in which full and adequate relief could be had, was clearly warranted in denying the defendants' motion and in proceeding to hear and determine the questions presented by the bills.

The main question in the case is whether the time has arrived for terminating the trust and distributing the estate among the remaindermen. It is conceded in the various pleadings of the parties that the grandchildren are of good habits and business capacity, that they are ready to furnish the security required by the will as a condition precedent to distribution, and that Eda F. Barker, the youngest living grandchild, is now twenty-one years of age. Counsel for Charles B. Barker contend that under the will, as construed in *Edgerly* v. *Barker*, 66 N. H. 434, the time for vesting and distributing the estate among the remaindermen arrived when Eda became twenty-one years old. Counsel for Clara Barker Berry apparently concede that the title to the estate vested in the remaindermen when Eda became twenty-one, but contend that the time for distribution has not arrived, as by the terms the will distribution is not to take place until the youngest grandchild reaches forty; that while it was decided in *Edgerly* v. *Barker* that the time for vesting should be cut down from forty to twenty-one years, to comply with the implied intention of the testator to reject what was against law and let the rest stand, it was not decided that the time fixed for distribution should also be cut down; that it was not necessary to so hold, as it was the time fixed for

vesting and not for distribution that infringed upon the rule against perpetuities. It is therefore necessary for us to ascertain what was considered and decided in *Edgerly* v. *Barker*, and to determine to what extent these contentions are sound. After a careful study of that case, the following propositions seemed to be deducible from the decision:

(1) That the testator intended the estate devised to trustees should vest in and be distributed among the grandchildren when the trust terminated, and that it should not vest in them so that they could sell and dispose of their interests before the time of distribution arrived (*pp.* 447, 448); that "during the intended continuance of the trust . . . the remainder should vest in no one but the trustees" (*pp.* 464, 465).

(2) That for the purpose of fixing the time of vesting and distribution, the testator used the word "children," in article 8, subdivision 5, of the will, in its limited sense, as meaning the sons and daughters of C. and H.; but for the purpose of fixing the persons who were to make up the class to whom distribution was to be made, he used the word and intended it should include the issue of those children who might die after the will was made (*pp.* 450, 451).

(3) That it was unnecessary to determine who, during the lives of C. and H., would be the youngest of the children; that it would be assumed, without considering the question, that during their lives the remainder would not vest in their issue (*p.* 451).

(4) That the general devise to trustees vested the legal title in them and was a good devise for the valid uses (including the interests absolute and conditional of C. and H.) for which the trustees were directed to hold the property during the lives of C. and H.; that during their lives, the trust, for these valid uses, would not infringe any rule of law (*p.* 464).

(5) That if the time appointed in the will for the remainder to pass from the trustees to the grandchildren were a mere nullity, the consequence would be that the remainder would pass at the termination of the life interests of C. and H., whose lives were intended to be the only lives in being that should be taken into consideration in determining the period during which vesting and distribution were to be postponed (*p.* 465).

(6) That beyond the time of the termination of the life interests of C. and H., the validity of the trust depended upon the question whether on this point the will is a mere nullity, or whether the

testator's intent that the remainder shall pass at a period more distant than the law allows is carried into effect as nearly as it can be—that is, at the most remote legal time (*p.* 465).

(7) That the testator's primary intent was that his grandchildren should have the bulk of his estate, and that his children should not; that the time when they should have it was secondary; that inability to carry into effect the secondary or subordinate intention would not be allowed to defeat the primary or general intention; and that applying the doctrine of *cy pres* in pursuance of his implied intent to throw out what is against law and let the rest stand, the last nineteen of the forty years in the devise to the grandchildren are too remote, while in the rest of the time and the rest of the will there is no illegality (*p.* 473).

(8) That by the testator's general approximating purpose, which is a part of the will, the testator's intention that the grandchildren shall not have the remainder till the youngest arrives at the age of forty is modified by his intent that they shall have it, and that the will shall take effect as far as possible. The forty years are reduced to twenty-one (*p.* 475).

From the foregoing summary of the opinion, it appears that the court did not undertake to decide whether the testator had provided in his will for a vesting and distribution of the remainder among the grandchildren upon the happening of a contingency that should take place during the lives of C. and H., for it is there assumed, without passing upon the question, that no such intent was expressed in the will. This course was pursued so that the court might consider the bald question, whether the provision for postponing the vesting and distribution of the remainder, after the expiration of the lives of C. and H., to such a time as the youngest grandchild reached forty, was predicated upon a contingency so remote that it could not be sustained. It was upon this proposition that the court, applying the testator's general approximate purpose, held that the forty years should be reduced to twenty-one. The question therefore remains whether the will discloses an intention on the part of the testator that the remainder should vest and be distributed among the grandchildren, during the lives of C. and H., when the youngest reaches forty.

In subdivision 5 of article 8 of the will, the testator, among other things, provides: "When the youngest of said children [of C. and H.] shall arrive at the age of forty years, then all my estate shall be theirs to have and to hold the same to them and their

heirs, those of them of good and regular habits and of capacity to do business and manage property, to take care of and manage as trustees the portion or portions thereof belonging to those, if any, who are not then possessed of such habits and capacity; but before said property shall vest in and be theirs, proper, suitable, and sufficient bonds or other security must be given by them for the payment of said sum or sums [the life annuities previously provided for] to my said daughter, if living, so long as she shall live, to my said son's widow, if she shall then be living, so long as she lives and remains his widow, and also for the good and sufficient support of my said son so long as he shall live."

It seems reasonably certain from the general language of the will, and especially from the provisions quoted calling for security to insure the payment of the annuities to C. and H. as a condition precedent to the vesting and distribution of the remainder during their lives, that the testator contemplated that the remainder should vest and be distributed among the grandchildren during the lives of C. and H., if during that period the youngest grandchild of those then in being reached the age of forty; and that unless this contingency happened during their lives, the remainder should not vest and be distributed until after C. and H. were dead and the youngest grandchild reached forty, cut down, according to *Edgerly* v. *Barker*, to twenty-one. This conclusion is not rendered less certain when the provisions of the will are considered with reference to the situation confronting the testator at the time he made his will and the codicils. The codicils antedate his death but a short time. Hiram was then about thirty-five years old and had five children. Clara was about forty-seven and was unmarried. Before any of the children, whether then living or subsequently born, could reach the age of forty, Hiram, if living, would be from sixty-two to seventy-five or more years old, and Clara would be from seventy-four to eighty-seven or more. It is reasonably probable that under these circumstances the testator concluded that if Clara and Hiram lived to such an advanced age as that the youngest grandchild then in being was forty years old, the class made up as of that time would include all whom he desired to make the objects of his bounty. It follows, therefore, that as the youngest living grandchild has not reached forty, the time for vesting and distributing the remainder during the lives of C. and H. has not arrived.

Under these circumstances it is conceded by the parties that

Eda, having attained the age of twenty-one years, is entitled to be paid the sum of $3,000 called for by subdivision 5, article 8, of the will, and the trustee is advised to pay her that sum.    It is unnecessary to answer or decide the other questions presented by the case, as a decision of them would be material only in case the time of distribution had arrived.

*Case   discharged.*

All concurred.